UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN HINTON,

     Plaintiff,

v.

AUBURN HILLS MANUFACTURING,
INC., a foreign corporation,

     Defendant.

Case No: 22-cv-11146

Judge Terrence G. Berg

Magistrate Judge
Elizabeth A. Stafford

_____/

**DEFENDANT AUBURN HILLS MANUFACTURING, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Auburn Hills Manufacturing, Inc., through its attorneys, Kienbaum Hardy Viviano Pelton & Forrest, P.L.C., requests that the Court enter summary judgment in its favor, pursuant to Federal Rule of Civil Procedure 56, and dismiss Plaintiff's complaint in its entirety with prejudice.   Defendant relies on its accompanying brief, exhibits, and declarations in support of its motion for summary judgment.

On April 10, 2023, Defendant's counsel sought concurrence from Plaintiff's counsel, explaining the nature of the motion and its legal basis, and requesting a conference to discuss the motion.  Plaintiff's counsel did not respond to the request for a conference, and concurrence was not obtained, necessitating this motion.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.

By: */s/Sonja L. Lengnick*
      William B. Forrest III (P60311)
      Sonja L. Lengnick (P67101)
      Michelle C. Ruggirello (P75202)
Attorneys for Defendant
280 North Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
wforrest@khvpf.com
slengnick@khvpf.com
mruggirello@khvpf.com

Dated:  April 17, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN HINTON,

      Plaintiff,

v.

AUBURN HILLS MANUFACTURING,
INC., a foreign corporation,

      Defendant.

Case No: 22-cv-11146

Judge Terrence G. Berg

Magistrate Judge
Elizabeth A. Stafford

_____/

**BRIEF IN SUPPORT OF DEFENDANT AUBURN HILLS
MANUFACTURING, INC.'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED..................................................... iii

CONTROLLING AUTHORITY.................................................................iv

INDEX OF AUTHORITIES..................................................................... v

I.      INTRODUCTION ...................................................................1

II.     STATEMENT OF MATERIAL FACTS ........................................3

        A.      Hinton's Work as a Hi Lo Driver at AAM's Auburn
                Hills Manufacturing Facility .........................................3

        B.      Hinton Volunteered to Work Primarily in the North
                Plant in March 2019 and Began Having Issues with his
                Asthma.........................................................................4

        C.      Hinton Provided A Note from His Doctor that Did not
                Allow Him to Work in Either Plant. ................................5

        D.      Hinton Brought a Second Doctor's Note Asking to Be
                Returned to His Previous Workplace Area. .......................7

        E.      On July 19, July 31 and August 28,  2019, AAM
                Provided Forms for Hinton's Doctor to Complete to
                Determine What Accommodation was Necessary, But
                Hinton Did Not Return Any of the Forms. .........................8

        F.      Hinton's Employment was Terminated on September
                17, 2019, for his Failure to Provide the Requested
                Information or Respond to AAM.....................................12

        G.      Hinton Files a Charge of Discrimination and Lawsuit. ......14

III.    ARGUMENT.......................................................................14

        A.      Summary Judgment Standard...........................................14

        B.      Summary Judgment Should be Granted on Plaintiff's
                Claims for Disability Discrimination. ...............................16

                1.      Standard of Proof of Disability Discrimination........16

2.   Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination................................................17

3.   AAM Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment – His Failure to Respond to Requests for Information – Which He Cannot Show Was a Pretext for Discrimination.......................................................19

C.   Summary Judgment Should be Granted on Hinton's Failure to Accommodate Claim Because He Did Not Provide the Required Medical Information........................................22

IV.   CONCLUSION.............................................................25

## STATEMENT OF ISSUES PRESENTED

1.    Should summary judgment be granted on Plaintiff Nathan Hinton's claims of disability discrimination under the Michigan Persons with Disabilities Civil Rights Act and the Americans with Disabilities Act with respect to his discharge, where the undisputed facts show that Plaintiff requested accommodation, but provided a doctor's note that precluded him from working at the Auburn Hills Manufacturing facility; he began a leave covered by short-term disability so the Company could determine what, if any, accommodation was needed and would allow him to work; he stopped engaging in the interactive process by failing to respond to his employer's multiple requests for medical information over a period of nearly two months; and he has no evidence that the reason for terminating his employment—his failure to provide the requested medical information or respond in any way—was a pretext for disability discrimination?

Defendant answers: "Yes."

2.    Should summary judgment be granted on Plaintiff's claims of failure to accommodate a disability under the Michigan Persons with Disabilities Civil Rights Act and the Americans with Disabilities Act where the undisputed facts show that Plaintiff never provided his employer with information regarding his specific restrictions or that would allow him to work in either plant at Auburn Hills Manufacturing, despite his employer sending him forms for his doctor to complete three times, and in failing to do so, he discontinued the interactive process, which he now claims was because the interactive process was in his "attorney's hands"?

Defendant answers: "Yes."

# CONTROLLING AUTHORITY

*Bowles v. Mapco Express, Inc.*,
  2021 WL 6618759 ................................................................. 18, 20, 24

*Denman v. Davey Tree Expert Co.*,
  266 F. App'x 377 (6th Cir. 2007) .........................................21

*Hoskins v. Oakland Cnty. Sheriff's Dep't.*,
  227 F.3d 719 (6th Cir. 2000) ....................................... 16, 19

*Kennedy v. Superior Printing Co.*,
  215 F.3d 650 (6th Cir. 2000) ................................... 20, 21, 24

*Kleiber v. Honda of Am. Mfg., Inc.*,
  485 F.3d 862 (6th Cir. 2007) ......................... 19, 22, 23, 24

*Swann v. Washtenaw Cnty.*,
  221 F. Supp. 3d 936 (E.D. Mich. 2016) ..............................19

*Tatum v. Hospital of University of Pennsylvania*,
  57 F. Supp.2d 145 (E.D. Pa. 1999), *aff'd*, 216 F.3d 1077 (3d Cir.
  2000) .........................................................................................24

*Tchankpa v. Ascena Retail Grp., Inc.*,
  951 F.3d 805 (6th Cir. 2020) ...............................................24

# INDEX OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................................15

*Arndt v. Ford Motor Co.*,
  247 F. Supp.3d 832 (E.D. Mich.), *aff'd*, 716 F. App'x 519 (6th Cir.
  2017)...................................................................................................23

*Blizzard v. Marion Tech. College*,
  698 F.3d 275 (6th Cir. 2012) ...................................................... 16, 21

*Bowles v. Mapco Express, Inc.*,
  2021 WL 6618759 .............................................................. 18, 20, 24

*Burdett–Foster v. Blue Cross Blue Shield of Michigan*,
  574 F. App'x 672 (6th Cir. 2014)........................................................23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...........................................................................15

*Chiles v. Machine Shop, Inc.*,
  238 Mich. App. 462, 606 N.W.2d 398 (1999) ....................................16

*Denman v. Davey Tree Expert Co.*,
  266 F. App'x 377 (6th Cir. 2007) .......................................................21

*Harb v. Mich. Bell Tel. Co.*,
  2007 WL 1565074 ..............................................................................21

*Hedrick v. Western Reserve Care Sys.*,
  355 F.3d 444 (6th Cir. 2004)..............................................................22

*Hoskins v. Oakland Cnty. Sheriff's Dep't.*,
  227 F.3d 719 (6th Cir. 2000)....................................................... 17, 19

*Jakubowski v. Christ Hosp., Inc.*,
  627 F.3d 195 (6th Cir. 2010)..............................................................23

*Kempter v. Mich. Bell Tel. Co.*,
  534 F. App'x 487 (6th Cir. 2013)........................................................23

*Kennedy v. Superior Printing Co.*,
　215 F.3d 650 (6th Cir. 2000) ................................................................ 20, 21, 24

*Kleiber v. Honda of Am. Mfg., Inc.*,
　485 F.3d 862 (6th Cir. 2007) ........................................................ 19, 22, 23, 24

*Kocsis v. Multi-Care Mgmt., Inc.*,
　97 F.3d 876 (6th Cir. 1996) ................................................................................21

*Maki v. Laakko*,
　88 F.3d 361 (6th Cir. 1996) ................................................................................15

*McDonnell Douglas Corp. v. Green*,
　411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) .........................................16

*McLaughlin v. City of Auburn Hills*,
　2020 WL 4530435 ................................................................................................21

*Michael v. City of Troy Police Dep't*,
　808 F.3d 304 (6th Cir. 2015) ..............................................................................19

*Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*,
　276 F.3d 845 (6th Cir. 2002) ..............................................................................15

*Rorrer v. City of Stow*,
　743 F.3d 1025 (6th Cir. 2014) ............................................................................23

*Smith v. Chrysler Corp.*,
　155 F.3d 799 (6th Cir. 1998) ..............................................................................22

*Swann v. Washtenaw Cnty.*,
　221 F. Supp. 3d 936 (E.D. Mich. 2016) .............................................................19

*Tatum v. Hospital of University of Pennsylvania*,
　57 F. Supp.2d 145 (E.D. Pa. 1999), *aff'd*, 216 F.3d 1077 (3d Cir.
　2000) ....................................................................................................................24

*Tchankpa v. Ascena Retail Grp., Inc.*,
　951 F.3d 805 (6th Cir. 2020) ..............................................................................24

*Tennial v. United Parcel Serv., Inc.*,
　840 F.3d 292 (6th Cir. 2016) ..............................................................................16

*Texas Dept. of Community Affairs v. Burdine*,
    450 U.S. 248 (1981) ..................................................................17

*Tingle v. Arbors at Hilliard*,
    692 F.3d 523 (6th Cir. 2012) ...................................................21

*Weintraub v. City of Dearborn*,
    2015 WL 1488992 ...................................................................23

*Whitfield v. Tennessee*,
    639 F.3d 253 (6th Cir. 2011) ...................................................16

*Williams v. Ford Motor Co.*,
    187 F.3d 533 (6th Cir. 1999) ...................................................15

**Statutes**

42 U.S.C. § 12112 (b)(5)(A) ..........................................................22

42 U.S.C. § 12112(a) ......................................................................16

MCL § 37.1102(2) ..........................................................................23

MCL § 37.1202(b) ..........................................................................16

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................14

**Regulations and EEOC Guidance**

29 C.F.R. 1630.2(r) ........................................................................19

29 C.F.R. pt. 1630, App. § 1630.14(c) ..........................................20

29 CFR § 1630.2(m) ......................................................................17

https://www.eeoc.gov/laws/guidance/enforcement-guidance-
    disability-related-inquiries-and-medical-examinations-employees ....................20

# I.   INTRODUCTION

Plaintiff Nathan Hinton was hired as a Hi Lo driver at American Axle & Manufacturing's ("AAM's") Auburn Hills Manufacturing facility in 2018.   The facility has a north and a south plant, which are separated by a parking lot.   Hinton started working primarily in the south plant but volunteered to move primarily to the north plant in March 2019.   After working mainly in the north plant for about four months, he brought in a doctor's note that said he could not work around graphite or other airborne particulates and he should avoid extreme heat, cold, and humidity due to asthma.   Hinton asked to go back to the south plant as a Hi Lo driver; however, the restrictions prohibited him working in either plant because there was graphite and other airborne particulates at both plants.   Further, all Hi Lo drivers were required to work in both plants and to work outside some of the day, which, in Michigan, means being in heat and humidity in summer and sub-freezing temperatures in winter.

Human Resources at the plant sent Hinton a reasonable accommodation form for his doctor to complete, asking for more specific medical information so it could determine whether he could work in either plant and what accommodation was needed.   Instead of returning the form, Hinton provided two vague doctor's notes, one "asking to be returned to his previous workplace area where he did not have any issues" and the other stating that he "should avoid the heavy significant graphite air

particles in the north plant."  AAM sent Hinton reasonable accommodation forms two more times in an effort to determine what level of graphite Hinton safely could work around and whether there were other restrictions, but none of the forms were completed and returned to AAM.

During the time AAM was attempting to obtain more specific medical information, Hinton was on a leave of absence, which was covered by short-term disability benefits.  His last contact with the plant was through his attorney on July 26, 2019.  After receiving no response to multiple attempts to contact Hinton and obtain more specific medical information, AAM terminated his employment effective September 17, 2019.  (AAM learned in discovery that Hinton had started working elsewhere shortly after he began his leave, while he was receiving short-term disability payments from AAM.)  Hinton now brings claims for failure to accommodate and disability discrimination under the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

The material facts are undisputed, and AAM is entitled to summary judgment on all of Hinton's claims.  Hinton never provided the medical information needed to determine appropriate accommodations or whether he was even able to work at either plant, despite several requests.  Because he did not participate in the interactive process and provide the necessary information, his reasonable accommodation claim

fails as a matter of law. Similarly, Hinton's termination was due to a legitimate, non-discriminatory reason, his failure to provide the requested medical information or respond in any way after nearly two months. Hinton has no evidence that this reason was a pretext for disability discrimination. Summary judgment should be granted, and Hinton's lawsuit dismissed in its entirety.

## II.      STATEMENT OF MATERIAL FACTS

### A.    Hinton's Work as a Hi Lo Driver at AAM's Auburn Hills Manufacturing Facility

1.      Hinton began working at AAM's Auburn Hills Manufacturing facility in February 2018 as a materials handler, also known as a forklift driver or Hi Lo driver, and he remained a Hi Lo driver throughout his employment. Ex. A, Excerpts of the Deposition of Nathan Hinton ("Hinton Dep.") at 41-42, 98-99, 102-103.[1]

2.      As a Hi Lo driver, Hinton made sure that the machinists had parts and coolant, loaded and unloaded trucks, stored parts and materials, dumped hoppers into outside dumpsters, and dumped excess water from materials stored outside. *Id.* 99-100; Ex. 5.

3.      The Auburn Hills Manufacturing facility has two plants, a north plant and a south plant, which are separated by a parking lot. *Id.* 102-103, 108.

_____

[1] AAM accepts that facts as stated in Plaintiff's deposition as true for the purposes of this motion only and reserves the right to challenge such facts at trial if necessary.

4.      In the north plant, billets are forged into parts, which are then taken to the south plant to be detailed, machined, and refined.  *Id.* 109.

5.      When Hinton started at AAM, he was working mainly in the south plant; however, the Hi Lo drivers had to go in both plants, and he regularly had to go into the north plant.  *Id.* 103, 110-112.

6.      If they were shorthanded or the north plant Hi Lo drivers needed help, he would need to go into the north plant more.  *Id.* 112, 15-116.

7.      If someone was absent or he was required to cover a mandatory overtime shift, he might be assigned to work in the north plant even though he usually was in the south plant.  *Id.* 113, 119-121.

8.      All Hi Lo drivers had to work outside periodically during the day, but the south plant Hi Lo drivers spent more time working outside.  *Id.* 113-115.

9.      Because the south plant is a machining plant, they have to empty hoppers into bins outside, and sometimes drain racks outside all day.  *Id.* 113-115.

10.      The north plant requires going outside some, but less than the drivers mainly working in the south plant.  *Id.*

**B.      Hinton Volunteered to Work Primarily in the North Plant in March 2019 and Began Having Issues with his Asthma.**

11.      Hinton volunteered to start working in the north plant primarily in approximately March 2019.  *Id.* 115-118, 128-129.

12.     When Hinton worked in the north plant, he operated the shot blaster (also called a Rosler) as one of the duties of the Hi Lo driver primarily working in the north plant.  *Id.* 102-103, 128-130.

13.     When Hinton worked primarily in the south plant, he did not have any problems with his asthma, even when he would go into the north plant or occasionally work an entire shift in the north plant.  *Id.* 143.

14.     However, after he volunteered to work in the north plant primarily, he started having problems with his asthma, which he believed was due to operating the shot blaster.  *Id.* 143, 146-147.

## C.     Hinton Provided A Note from His Doctor that Did not Allow Him to Work in Either Plant.

15.     Hinton went to his doctor, and got a note from his doctor dated July 16, 2019, that said:

> Patient not allowed to work in area where graphite or other airborne particulates can be inhaled.  Also avoid extreme heat/cold/humidity due to asthma.

*Id.* 146-149; Ex. 6.

16.     He brought the note to his supervisor and asked to go back to working in the south plant primarily.  *Id.* 146-147.

17.     His supervisor said that was fine, but he would need to take the note to Human Resources (HR), and it needed to be documented with HR.  *Id.* 146-147.

18.     Hinton took the note to Jenny Farrell in HR.  *Id.* 147.

19.     Requests for accommodation at AAM are handled by HR, which is responsible for obtaining medical information, determining what accommodations are appropriate and reasonable, and ensuring that the employee's medical restrictions are consistent with the work performed.  Ex. B, Declaration of Maureen Boze ("Boze Decl.") ¶ 3.

20.     Farrell told Hinton he could not work in either plant with the note because there was graphite, airborne particles, vapors, and dust in both plants.  Ex. A, Hinton Dep. 147-148, 153-154, 160-161, Ex. 6; Ex. B, Boze Decl. ¶ 4.

21.     Hinton told Farrell that he really only needed to avoid the shot blast (Rosler) room, but the note that he presented did not say that or provide any indication of the level of graphite or other airborne particles he could be around.  Ex. A, Hinton Dep. 159; Ex. 6.

22.     The note also did not define what extreme heat, cold or humidity meant.  *Id.* 151; Ex. 6.

23.     Hinton testified that he could work outside in the extreme cold and could work on rooftops in the middle of summer but that he could not work in the excessive heat of the shot blast room.  *Id.* 150-154.

24.     When asked how Farrell was supposed to know exactly what extreme heat and cold meant, Hinton said "I explained it to her."  *Id.* 152-153.

25.     In contrast to Hinton's testimony, his health care provider testified that extreme heat is "upper 80s, 90s" and extreme cold is "if your breath was showing." Ex. C, Excerpts of the Deposition of Charlene Bailey ("Bailey Dep."), at 22-23.

26.     Farrell told Hinton that he would have to get another doctor's note so that AAM could understand what the first note meant.  Ex. A, Hinton Dep. 158.

27.     Farrell also told him that he should apply for short-term disability through AAM's short-term disability administrator, Sedgwick, which would allow him to be paid while AAM determined whether and where he could work.  *Id.* 161.

## D.     Hinton Brought a Second Doctor's Note Asking to Be Returned to His Previous Workplace Area.

28.     Hinton got another note from his doctor dated July 18, 2019, which he brought to Jessica Stover in HR, as Farrell had the day off.  *Id.* 163-164, 166-67; Ex. 9.  It said:

> He states that he has been having problems with the one area of his job, that according to the employee has excessive graphite in the air.  He states that it is a closed area with poor ventilation.  Mr. Hinton can perform the essential duties of his job without any issues.  We are only asking for accommodation regarding his asthma.  He is only asking to be returned to his previous workplace area where he did not have any issues.  He should not be penalized due to his history of asthma.

*Id*. 163-165; Ex. 9.

29.     The note did not state what his work restrictions were, what level of graphite Hinton could be exposed to, or how much graphite was excessive or not excessive. *Id.* 164-165; Ex. 9.  It also did not mention other airborne particulates or heat, cold or humidity like the note from two days earlier had. *Id.* 165; Ex. 9.

30.     Hinton's health care provider testified she just wrote what Hinton asked her to write.  Ex. C, Bailey Dep. 27-32.

31.     Stover advised Hinton that she needed to know what he could work in and that she would have to talk to Farrell.  Ex. A, Hinton Dep. 166-67.

**E.     On July 19, July 31 and August 28,  2019, AAM Provided Forms for Hinton's Doctor to Complete to Determine What Accommodation was Necessary, But Hinton Did Not Return Any of the Forms.**

32.     After speaking with Farrell, Stover emailed Hinton on July 19, 2019, sending him ADA forms to complete and send back to Human Resources. *Id.* 168-170; Ex. 10.

33.     The forms included a page for Hinton to complete about the accommodation needed, a form for the health care provider to complete, and job descriptions for Hinton's job as well as an alternative job that the Company was considering for him. *Id.* 169-174; Exs. 5, 8, 10.

34.     Stover said that in the meantime, Hinton should open a short-term disability claim with Sedgwick. *Id.* 169-170; Ex. 10.

35.     Hinton contacted Sedgwick and started a short-term disability claim. *Id.* 178.

36.     He began receiving short-term disability benefits effective July 25, and he received $384 per week through September 24, 2019.  *Id.* 178-179; Ex. 11.

37.     Hinton began working for a new employer around the end of July 2019, while receiving short-term disability benefits from AAM.  *Id.* 22, 179.

38.     AAM does not allow its employees to receive short-term disability benefits from AAM while working elsewhere; however, AAM did not know that Hinton was doing this.  Ex. B, Boze Decl. ¶ 13.

39.     After receiving the email from Stover with the forms for the accommodation process, Hinton called an attorney.  Ex. A, Hinton Dep. 196.

40.     Hinton's attorney took care of all communications with his doctor after that because it was an "inconvenience" for Hinton to have to do it.  *Id.* 196.

41.     Hinton does not recall if he filled out the first page of the ADA form that Stover sent, which was for the employee to fill out regarding reasonable accommodation.  *Id.* 175-176.

42.     Hinton also does not know if his doctor ever sent the ADA forms back to AAM; he did not take the forms back himself.  *Id.* 174-178.

43.     On July 26, 2019, instead of receiving the completed forms, AAM received a letter from Hinton's attorney enclosing a third doctor's note, this one dated July 22, 2019. *Id.* 188-189; Ex. 14. Ex. B, Boze Decl. ¶ 6.

44.     Hinton does not know why the forms were not filled out and the July 22 doctor's note provided instead, because at this point it was "in my attorney's hands." Ex. A, Hinton Dep. 194-195.

45.     The July 22, 2019 note said:

> [Hinton] is capable of performing the essential functions of his job with or without the accommodation, but should avoid the heavy significant graphite air particles in the north plant.

Ex. A, Hinton Dep. Ex. 14.

46.     When asked what "heavy significant" graphite air particles meant in terms of quantification, Hinton did not know, but stated "the stuff that's over there, that blasts, that soot that's over there." *Id.* 190-191.

47.     Hinton's health care provider also testified that she does not know what level of graphite would aggravate his asthma, and she was writing what she was told to write. Ex. C, Bailey Dep. 18, 20, 33-35.

48.     Hi Lo drivers in the south plant had to be able to work in the north plant, including in the shot blast room (Ex. A, Hinton Dep. 110-121), but Hinton does not know if there is a specific time period that he could be in or around the shot blast room and have it not affect him. *Id.* 191.

49.     When asked what he thought the note meant in terms of whether he could go in the north plant but just not be in the shot blast room, he vaguely stated "I would think it meant I don't need to be around that stuff in the blasting room." *Id.* 192.

50.     The three notes that AAM had received regarding Hinton were imprecise, conflicting and only a few days apart, and AAM still did not have information that was specific enough for it to determine whether he could safely work in either plant.  Ex. B, Boze Decl. ¶ 7.

51.     Therefore, on July 31, 2019, AAM sent Hinton a letter for him to take to his doctor describing the course of events and providing job descriptions for Hinton's job and another potential position, and safety data sheets for chemicals which could be airborne at the plants.  *Id.*; Ex. A, Hinton Dep. 197; Ex. 15.

52.     AAM asked specific questions regarding Hinton's ability to perform the positions and whether he could be exposed to the specific chemicals present in the plants and to what degree.  AAM requested a response by August 15, 2019.  Ex. A, Hinton Dep. Ex. 15.

53.     Hinton does not know whether his doctor ever completed the form or whether it was ever submitted to HR.  *Id.*198.

54.     AAM did not receive the requested medical information related to his request for accommodation by the due date, August 15.  Ex. B, Boze Decl. ¶ 8.

55.    In reviewing the situation after the due date had passed with no response, AAM noticed that one of attachments to the July 31 letter had not been sent to Hinton, so AAM resent the letter and all attachments on August 28.  Ex. B, Boze Decl. ¶ 9.  AAM provided a new due date for Hinton to return the information, September 9.  *Id.*; Ex. A, Hinton Dep. 199, 205; Ex. 16.

56.    Hinton does not know whether his doctor ever completed this form or returned it to AAM or whether his attorney provided medical information to AAM, and he said, "It was out of my hands."  Ex. A, Hinton Dep. 199, 213-214.

## F.    Hinton's Employment was Terminated on September 17, 2019, for his Failure to Provide the Requested Information or Respond to AAM.

57.    AAM did not receive any completed form from Hinton's doctor or any other additional information from Hinton or his doctor by the due date of September 9 or thereafter.  Ex. B, Boze Decl. ¶ 10.

58.    The last contact Hinton made with the plant was the July 26, 2019 letter from his attorney.  *Id.*; Ex. A, Hinton Dep. 210-215, Ex. 17.

59.    Given that Hinton had not provided the medical information requested to determine what accommodation was needed and whether it would be consistent with his asthma for him to work in any position in the plant after multiple requests for such information and nearly two months with no contact from him, AAM determined that Hinton should be discharged.  Ex. B, Boze Decl. ¶ 11.

60.     On September 17, 2019, AAM sent Hinton a letter stating his employment was terminated because he had not responded to requests for information regarding his need for accommodation.  Ex. A, Hinton Dep. 208; Ex. 17.

61.     When Hinton received the termination letter, he thought:  "I was like dang, not even two months later and nobody reaching out to me like that.  Everybody had my phone number.  Everybody got my address."  *Id.* 208-209.

62.     But Hinton admitted that the Company had tried to contact him repeatedly about his employment status and ADA request; he never asked for more time to provide the medical information; and he did not contact AAM after receiving the termination letter to state it was a mistake.  *Id.* 209, 212-215.

63.     After Hinton's discharge, AAM learned that a portion of the first form for the doctor to fill out had been completed and provided to Sedgwick, but it was never provided to AAM, as Hinton was instructed.  Ex. B, Boze Decl. ¶ 12.

64.      Sedgwick handles leave and short-term disability benefits – not workplace accommodations.  *Id.*

65.     However, even if AAM had been aware of the document sent to Sedgwick, it said the virtually same thing as the doctor's note dated July 22, 2019:  "he is capable of performing essential job functions with or without

accommodations, but should avoid the heavy significant graphite air particles in the north plant." *Id.*

66.    Hinton also contacted corporate HR on July 19, 2019 to file a complaint, but he did not provide corporate HR with medical information.  Ex. A, Hinton Dep. 182-183, 211; Ex. 12.

**G.    Hinton Files a Charge of Discrimination and Lawsuit.**

67.    Hinton filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on November 18, 2019, which was dismissed on March 22, 2022.  *Id.* 220-222.

68.    Hinton filed this lawsuit in on May 25, 2022 [ECF No. 1], alleging violation of the Michigan Persons with Disabilities Civil Rights Act, which he amended on June 2, 2022 [ECF No. 4], to add claims under the Americans with Disabilities Act.

## III.      ARGUMENT

**A.    Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party bringing a summary judgment motion has the burden of identifying portions of the record demonstrating the

absence of a genuine dispute over material facts.  *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).   The party opposing summary judgment then must designate specific facts in affidavits or depositions showing evidence on which the jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"To preclude summary judgment, the nonmoving party must present evidence, beyond his pleadings and his own conclusory statements, to establish the existence of specific triable facts."  *Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996). *See also Williams v. Ford Motor Co.*, 187 F.3d 533, 544 (6th Cir. 1999) (plaintiff cannot rely on conclusory affidavits to defeat summary judgment).   A "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  If the non-moving party is unable to meet his or her burden of proof, summary judgment is proper.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

**B.     Summary Judgment Should be Granted on Plaintiff's Claims for Disability Discrimination.**

**1.     Standard of Proof of Disability Discrimination.**

The ADA provides that an employer shall not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).[2]  Under the indirect, or *McDonnell Douglas*, method of proof, the plaintiff must first establish a prima facie case of disability discrimination by showing: 1) he is disabled; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) he suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.  *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016); *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011).  *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for its actions.  *Blizzard v. Marion Tech. College*, 698 F.3d 275, 284 (6th Cir. 2012).  Once the defendant does so, plaintiff

---

[2] The PWDCRA prohibits employers from discharging or discriminating against employees because of a disability that is unrelated to the ability to perform the job. MCL § 37.1202(b).  The ADA and PWDCRA share the same purpose, and Michigan courts generally look to ADA cases in analyzing cases brought under the PWDCRA. *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 472; 606 N.W.2d 398 (1999). The two claims will be discussed together.

may avoid summary judgment only by proffering sufficient admissible evidence from which a reasonable jury could conclude that the defendant's articulated reason for its action was a pretext and that the real reason was unlawful disability discrimination.   *Id.* at 285.   The ultimate burden of proving intentional discrimination based on disability remains with the plaintiff.   *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### 2. Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination.

Here Plaintiff cannot establish a prima facie case of disability discrimination because he cannot show he is otherwise qualified for the position of Hi Lo driver, with or without reasonable accommodation.  A person who is otherwise qualified is one who can perform the essential functions of the position, with or without accommodation.  29 C.F.R. § 1630.2(m); *Hoskins v. Oakland Cnty. Sheriff's Dep't.*, 227 F.3d 719, 724 (6th Cir. 2000).

Hinton first brought in a doctor's note stating he could not work in an area where graphite or other airborne particulates can be inhaled and had to avoid extreme heat/cold/humidity.  Ex. A, Hinton Dep. Ex. 6.  Hi Lo drivers, regardless of whether assigned primarily to the north plant or south plant, are exposed to graphite and other airborne particulates.  *Id.* at 102-103, 109-116, 119-120, 133-134, 154, Ex. 5; Ex. B, Boze Decl. ¶ 4.  Hi Lo drivers are also required to work outside in all weather conditions in all seasons, which includes temperatures well into the 90s and below

zero and high humidity in the warmer months.  Ex. A, Hinton Dep. 99-100, 113-115, Ex. 5; Ex. B, Boze Decl. ¶ 4.  Under this note, Hinton was not otherwise qualified for this job (with or without accommodation) because he could not perform these essential functions.  Hinton's two subsequent doctor's notes did not show that he could perform the functions of his job either, with one stating he "has been having problems with the one area of his job, that according to the employee has excessive graphite in the air" and  the other stating he "should avoid the heavy significant graphite air particles in the north plant."  Ex. A, Exs. 9, 14.

Based on this varying and vague language, it was impossible to determine whether Hinton could safely perform the Hi Lo driver job, even if assigned primarily to the south plant; Hi Lo drivers were required to work in both plants, and both plants had graphite.  *Id.* 103, 110-116, 119-121; Ex. B, Boze Decl. ¶ 4.  Hinton never provided the more specific information needed to determine whether and under what conditions he could perform his job (or other jobs that might be available). Accordingly, he cannot satisfy his burden to show he was otherwise qualified to perform the job (with or without accommodation) and cannot establish a prima facie case.  *Bowles v. Mapco Express, Inc.*, No. 2:20-CV-2172-MSN-JAY, 2021 WL 6618759, at *7 (W.D. Tenn. July 2, 2021) (where plaintiff submitted a doctor's note but failed to respond to employer's requests for detailed information regarding his ability to safely perform his job duties, plaintiff could not show he was otherwise

qualified); *see also Hoskins,* 227 F.3d at 726-27 (sheriff's deputy who was unable to restrain inmates was not otherwise qualified for the job); *Swann v. Washtenaw Cnty.*, 221 F. Supp.3d 936, 941 (E.D. Mich. 2016) (vocational specialist who could not perform essential job function of lifting was not otherwise qualified).[3]

### 3. AAM Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment – His Failure to Respond to Requests for Information – Which He Cannot Show Was a Pretext for Discrimination.

Even if Hinton could establish a prima facie case, AAM has offered a legitimate, non-discriminatory reason for his discharge: Hinton's employment terminated because he never provided the medical information necessary to

---

[3] Hinton asserts that he could work in the south plant because "I don't see anything in the air . . . I breathe pretty good. I'm not blowing black snot out my nose and spitting black boogies." Ex. A, Hinton Dep. 166. His conclusory testimony cannot raise an issue of fact as to whether he was able to work in the south plant despite the graphite present there. *Kleiber v. Honda of Am. Mfg., Inc.*, 420 F. Supp.2d 809, 825 (S.D. Ohio 2006), *aff'd,* 485 F.3d 862 (6th Cir. 2007) (plaintiff's personal observations and conclusory opinions he could perform work at defendant are not sufficient to withstand summary judgment). It also ignores that the fact that even if assigned primarily to the south plant, Hinton would have had to work in the north plant as well. Ex. A, Hinton Dep. 103, 110-116, 119-121. Hinton's performance of any job at AAM may have constituted a direct threat under the ADA, making him not otherwise qualified for that reason as well. An employee is not otherwise qualified if the employee's performance of the job poses a direct threat to the employee or others. 29 C.F.R. 1630.2(r); *Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015). The doctor's notes Hinton provided raised a question as to whether he could perform any job in either plant without constituting a direct threat to himself, a question that was not resolved due to his lack of cooperation.

determine whether he could perform the job and what accommodations were needed or to otherwise be in contact with AAM for nearly two months.[4] Ex. A, Hinton Dep. Ex. 17; Ex. B, Boze Decl. ¶ 11.

AAM's requests for information were legitimate, as an employer may make medical inquiries necessary to the reasonable accommodation process. 29 C.F.R. pt. 1630, App. § 1630.14(c); *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000) ("employers may require an employee to provide medical documentation which proves her disability requires accommodation"). Medical "[d]ocumentation is sufficient if it: (1) describes the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed. https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees, No. 10 (last visited April 11, 2023).

If information provided by the employee is insufficient to support an accommodation request, as was the case here, an employer is permitted to ask for additional information. *Id.* No. 11; *Bowles*, 2021 WL 6618759, at *7. Hinton agreed

---

[4] This may have been because he had started another job shortly after his attorney's last contact with AAM on July 26, 2019. Ex. A, Hinton Dep. 214.

the requests for medical information were not objectionable. Ex. A, Hinton Dep. 158, 162-163, 186. However, he never provided the requested information, and his failure to submit necessary medical information in the accommodation process or otherwise be in contact with HR is a legitimate basis for termination. *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007); *Kennedy*, 215 F.3d at 656; *McLaughlin v. City of Auburn Hills*, 2020 WL 4530435, at *11-12 (E.D. Mich. 2020).

Hinton can offer no evidence establishing that AAM's legitimate, non-discriminatory reason was a pretext for disability discrimination. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citation omitted). A plaintiff can show evidence of pretext in one of three ways: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action. *Blizzard*, 698 F.3d at 284; *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996); *Harb v. Mich. Bell Tel. Co.*, No. 06–11777, 2007 WL 1565074, *6 (E.D. Mich. May 29, 2007). "[S]o long as the employer honestly believed in the proffered reason given for its employment action" and its belief is "reasonably grounded on particularized facts that were before it at the time of the employment action," a plaintiff "cannot establish pretext even if the

employer's reason is ultimately found to be mistaken, foolish, trivial or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).  In assessing the employer's proffered explanation for the decision, "it is inappropriate for the judiciary to substitute its judgment for that of management" or to act as a super-personnel department.  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

Hinton has no evidence that AAM's reason—that he did not provide the required documentation or otherwise respond to AAM's efforts to contact him—was a pretext to cover up disability discrimination.  It is undisputed that Hinton never provided AAM with responses to the requests for information from his health care provider (Ex. B, Boze Decl. ¶ 10; Ex. A, Hinton Dep. 174-178, 156-157, 194-195, 198-199, 213-214), and he has no evidence this reason for his discharge was false or not the real motivation for his termination.  Ex. A, Hinton Dep. 208-214, 216. Summary judgment should be granted on his disability discrimination claim.

**C.** **Summary Judgment Should be Granted on Hinton's Failure to Accommodate Claim Because He Did Not Provide the Required Medical Information.**

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112 (b)(5)(A); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007); *see also* MCL §

37.1102(2) (duty to reasonably accommodate under the PWDCRA). To prove failure to accommodate, the plaintiff has the initial burden to show that: 1) he is disabled; 2) he is otherwise qualified; 3) his employer knew or should have known of his disability; 4) he requested a reasonable accommodation; and 5) his employer failed to provide a reasonable accommodation. *Weintraub v. City of Dearborn*, No. 13-11481, 2015 WL 1488992, at \*5 (E.D. Mich. Mar. 31, 2015), *citing Burdett–Foster v. Blue Cross Blue Shield of Michigan,* 574 F. App'x 672, 680 (6th Cir. 2014). The employee has "the burden of proposing an accommodation and proving that it is reasonable." *Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 202 (6th Cir. 2010); *see also Kempter v. Mich. Bell Tel. Co.,* 534 F. App'x 487, 491 (6th Cir. 2013).

Determining a reasonable accommodation requires an interactive process between the employee and employer "to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Arndt v. Ford Motor Co.,* 247 F. Supp.3d 832, 850 (E.D. Mich.), *aff'd*, 716 F. App'x 519 (6th Cir. 2017), quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014). "[T]he interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber*, 485 F.3d at 871. If a party "obstructs the process or otherwise fails to participate in good faith . . . responsibility will lie with the party that caused the breakdown." *Arndt*, 247 F. Supp.3d 850 (citations omitted).

-23-

As discussed above, Hinton cannot show he was otherwise qualified, because he presented no medical evidence that he could safely perform the duties of the Hi Lo position at either plant.  Similarly, he never presented evidence that the accommodation he requested—to be assigned mainly to the south plant as a Hi Lo driver—was reasonable, because he never presented evidence that he could work in an environment with graphite and other airborne particles present at the plants and work outside in the Michigan heat, cold and humidity.[5]  The responsibility for the breakdown of the interactive process lies with Hinton, who did not submit the medical information requested, despite AAM sending him the forms three times and providing nearly two months to submit the information before terminating him.  An employer is not liable for failure to accommodate where the employee does not cooperate in the interactive process by providing the medical information required to support the accommodation.  *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 813 (6th Cir. 2020); *Kennedy*, 215 F.3d at 656; *Bowles,* 2021 WL 6618759, at *7; *Tatum v. Hospital of University of Pennsylvania*, 57 F. Supp.2d 145, 149 (E.D. Pa. 1999), *aff'd*, 216 F.3d 1077 (3d Cir. 2000).  Summary judgment should be granted to AAM on Hinton's failure to accommodate claim.

---

[5] Hinton also cannot satisfy his burden to show that a vacant position existed into which he could be placed.  *See Kleiber*, 420 F. Supp.2d at 821.

## IV.        CONCLUSION

The undisputed material facts show that AAM is entitled to judgment as a matter of law on all of Hinton's claims.  His Complaint should be dismissed in its entirety and summary judgment entered in favor of Defendant.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.

By: */s/Sonja L. Lengnick*
       William B. Forrest III (P60311)
       Sonja L. Lengnick (P67101)
       Michelle C. Ruggirello (P75202)
Attorneys for Defendant
280 North Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
wforrest@khvpf.com
slengnick@khvpf.com
mruggirello@khvpf.com

Dated:  April 17, 2023

474662

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to upon all ECF participants.

/s/Sonja L. Lengnick
280 N. Old Woodward Ave.,
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
 slengnick@khvpf.com
(P67101)

474662